UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

KIMBERLEY L.,[1]                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      No. 4:25-cv-00072-SEB-KMB
                                        )
FRANK BISIGNANO,                        )
                                        )
            Defendant.                  )

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Kimberley L. applied for disability benefits from the Social Security Administration ("SSA") on November 1, 2022, alleging an onset date of July 1, 2018. [Dkt. 8-5 at 5.] Kimberley's date last insured ("DLI") is December 31, 2021. [Dkt. 8-3 at 2.] Administrative Law Judge David Cornelius (the "ALJ") issued a decision on April 10, 2024, concluding that Kimberley was not disabled and therefore not entitled to receive the requested benefits. [Dkt. 8-2 at 21.] The Appeals Council denied her request for review on February 13, 2025. [*Id.* at 2.] On April 18, 2025, Kimberley timely filed this civil action, asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motion. [Dkt. 10.] For the reasons detailed herein, the Magistrate Judge recommends that the

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

1

District Judge **REVERSE and REMAND** the Commissioner's decision finding that Kimberley was not disabled.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled.

*Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).   The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).   "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id*.  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

3

## II. BACKGROUND[2]

Kimberley was 50 years old when she applied for disability benefits. [Dkt. 8-3 at 2.] She previously worked as a sprayer and in general labor for manufacturing businesses. [Dkt. 8-6 at 41.] She also served in the United States Army from 1995 to 1997. [*Id.*]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Kimberley was not disabled. Specifically, the ALJ found as follows:

- At Step One, Kimberley has not engaged in substantial gainful activity since her alleged onset date of June 1, 2018, through her DLI of December 31, 2021. [Dkt. 8-2 at 13.]

- At Step Two, Kimberley has the following severe impairments: substance abuse in remission, anxiety disorder, depressive disorder, diabetes, hypertension, neuropathy, and degenerative disc disease [*Id.* at 14.]

- At Step Three, Kimberley does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.*]

- After Step Three but before Step Four, Kimberley has the RFC "to perform light work as defined in 20 CFR 404.1567(b) except claimant can perform light work that requires no more than occasional postural movements, but avoids concentrated exposure to heat, humidity vibrations, and hazards. Commercial driving and operating dangerous machinery should not be essential job functions. She can perform simple, routine work where duties basically stay the same from day to day and contact with the public is occasional." [*Id.* at 15-16.]

- At Step Four, through the DLI, Kimberley was able to perform past relevant work as an assembler. [*Id.* at 19.]

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering Kimberley's age, education, and RFC, there were other jobs that existed in the national economy in addition to her past relevant work that Kimberley could have performed through the date of the decision, including laundry sorter, inspector battery, folder, and delivery router clerk. [*Id.* at 20.]

## III. DISCUSSION

Kimberley raises three issues for the Court's review, with several sub-issues: (1) whether

---

[2] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

the ALJ's decision was impermissibly based on the ALJ's lay interpretation of significant objective and other evidence; (2) whether the RFC properly accommodates for all of Kimberley's conditions; and (3) whether the ALJ's subjective symptom analysis was patently wrong because the ALJ improperly relied on his own lay determination of Kimberley's symptoms. The Court begins with the third issue raised by Kimberley, which the undersigned finds to be dispositive and require remand.

### A. The ALJ improperly relied on his own interpretation of the medical evidence to determine Kimberley's RFC

In her opening brief, Kimberley argues that remand is warranted because the ALJ crafted Kimberley's RFC based on his own lay interpretation of the medical evidence rather than any supporting medical opinion. [Dkt. 11 at 6.] Specifically, Kimberley emphasizes there are no medical opinions at all in the record; indeed, the State Agency physical and psychological consultants found there was insufficient evidence in the record prior to Kimberley's DLI to assess the severity of her impairments and that no consultative examiner provided an opinion regarding her functional limitations. [*Id*. at 5-6.] It follows then, according to Kimberley, that because there were no medical opinions in the record for the ALJ to review in his RFC determination, the ALJ must have independently interpreted medical evidence, improperly discounted abnormal findings and other evidence favorable to disability, and improperly formulated an RFC. [*Id*. at 6-10.]

In response, the Commissioner admits that "there was no [medical] opinion for the ALJ to consider in this case." [Dkt. 13 at 4.] But the Commissioner argues that that Kimberley is incorrect in concluding that the ALJ lacked the authority to assess her RFC; rather, the Commissioner argues that the regulations expressly assign responsibility for determining a claimant's RFC to the ALJ, who is not required to base the RFC on or adopt any particular medical opinion. [*Id*.] According to the Commissioner, the ALJ appropriately evaluated the evidence of Kimberley's physical and

5

mental impairments based on the record before him, and this Court should not reweigh the evidence. [*Id.* at 5.] The Commissioner then cites several pieces of evidence the ALJ considered in crafting the RFC, including congenital cervical disc fusion at C3-4 and minimal facet arthropathy at L4-5 and L5-S1, Kimberley's mental health disorders, Kimberley's subjective complaints, and treatment notes from before Kimberley's DLI. [*Id.* at 6-9.] The Commissioner ultimately argues that the ALJ supported his RFC finding with substantial evidence and "more than minimally explained and supported his RFC finding." [*Id.* 5-7.]

In reply, Kimberley concedes that while it is true that the ALJ is responsible for crafting the RFC, that duty does not permit the ALJ to rely on his own judgment where no medical source assessed the functional impact of Kimberley's impairments. [Dkt. 14 at 5.] Kimberley reiterates that because there are no medical opinions in the record, the ALJ necessarily and improperly relied on his own lay interpretation of raw data and complex medical findings to deduce that Plaintiff could perform light work. [*Id.* at 4.]

Kimberley also argues in reply that the absence of any medical opinion created an evidentiary gap that the ALJ was obligated to address, not fill with his own speculation. [*Id.* at 6.] Kimberley pushes back on the Commissioner's assertion that the ALJ's recitation of the evidence in the record he reviewed was sufficient. [*Id.*] Kimberley argues that once the State Agency consultants determined there was insufficient evidence to assess the severity of her impairments, the ALJ had a duty to further develop the record by recontacting the consultants, obtaining a consultative examination, or otherwise securing an updated medical opinion. [*Id.*]

A claimant's RFC "describes the maximum [she] can do in a work setting despite [her] mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)). ALJs are required to "rely on expert opinions instead of determining

6

the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). Moreover, Kimberley bore the burden of establishing disability through Step Four. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). Thus, the absence of a medical opinion did not, by itself, require the ALJ to find Kimberley disabled or relieve her of her evidentiary burden. But an ALJ still must support the RFC with substantial evidence and explain how the evidence supports the functional limitations assessed. *See Jarnutowski*, 48 F.4th at 774-75. Although an ALJ may evaluate objective findings and other evidence, the ALJ may not independently determine the medical significance of those findings. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves"). Nor may an ALJ merely summarize evidence and announce an RFC without building the necessary logical bridge between the two. *See Briscoe*, 425 F.3d at 352.

In Kimberley's case, the state agency consultants concluded that the evidence was insufficient to assess Kimberley's functional capabilities. [Dkt. 8-3 at 4-5, 9.] The ALJ acknowledged those findings, noting that the consultants "found there was insufficient evidence upon which to rate the claim" and that, as a result, "there are no opinions upon which to evaluate persuasiveness." [Dkt. 8-2 at 18.] The ALJ nevertheless assessed a detailed RFC limiting Kimberley to light work; occasional postural movements; no concentrated exposure to heat, humidity, vibrations, or hazards; work that did not require commercial driving or operation of dangerous machinery; simple and routine duties that remained essentially the same from day to day; and occasional public contact. [*Id.* at 15-16.]

The State agency consultants' findings that the evidence was insufficient to assess Kimberley's functional capabilities left the record without any medical assessment connecting the

raw medical evidence to particular work-related limitations.  Although the ALJ was responsible for determining Kimberley's RFC, he was not permitted to fill that evidentiary gap by independently interpreting examination findings and other medical evidence to formulate specific functional restrictions.  *See Jacqueline E. S. v. O'Malley*, 2024 WL 557825, at *10-15 (S.D. Ind. Jan. 16, 2024) (recommending remand where the ALJ formulated a detailed RFC based on his own interpretation of examination findings and imaging after the state agency physicians found insufficient evidence to assess the claimant's functional limitations); *Josette S. v. Kijakazi*, 2023 WL 2477536, at *6–8 (N.D. Ill. Mar. 13, 2023) (remanding where the state agency consultants found insufficient evidence to assess the claimant's functional capabilities, yet the ALJ relied on her own interpretation of a nearly identical record to formulate specific RFC restrictions unsupported by any medical opinion).

In Kimberley's case, the ALJ did more here than simply list diagnoses or raw test results. He discussed evidence suggesting that Kimberley's impairments were not as limiting as she alleged, including minimal lumbar facet arthropathy, no significant cervical degenerative disc disease, normal gait and lower-extremity examinations, no reported difficulty walking or climbing stairs, diabetes and hypertension controlled with medication, generally stable mental-status examinations, and improvement after Kimberley stopped abusing substances and left an abusive environment.  [Dkt. 8-2 at 16-18.]  He also considered activities such as driving, shopping, doing laundry, walking her dog, reading, completing puzzles, attending church, and using social media. [*Id*. at 17.]  The ALJ concluded that this evidence provided reasons to discount the alleged severity of Kimberley's symptoms and could support some finding of work capacity.  [*Id.* at 16.]

The ALJ did not, however, explain how that evidence established the specific capacities and restrictions he selected.  For example, he did not identify evidence supporting his conclusion

8

that Kimberley could meet light work's lifting requirements or stand and walk for approximately six hours in an eight-hour workday. *See* 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5-6. Nor did he explain why Kimberley could perform each postural movement occasionally, or why she could tolerate some but not concentrated exposure to heat, humidity, vibrations, and hazards. [Dkt. 8-2 at 16.] Although the ALJ linked the restriction concerning vibration to Kimberley's non-severe carpal tunnel syndrome, [dkt. 8-2 at 14], he did not similarly connect the remaining environmental restrictions to evidence of Kimberley's functional capacity.

The ALJ's explanation of the mental RFC suffers from a similar problem. His discussion supplied reasons for finding that Kimberley's mental impairments were not disabling, but he did not explain how the evidence supported the precise conclusion that she could sustain simple, routine work with duties that remained essentially the same from day to day and occasional public contact. [*Id.* at 16.] The ALJ ultimately stated only that "[b]ased on the foregoing," the RFC was "supported by the evidence of record viewed in its entirety" and that Kimberley "remain[ed] capable of lighter work that does not require frequent public contact." [*Id.* at 18-19.] This generalized conclusion did not connect the evidence to the specific functional findings necessary to permit meaningful review. *See Jarnutowsk*i, 48 F.4th at 774-75; *Briscoe*, 425 F.3d at 352.

The Commissioner points to this same evidence summarized by the ALJ, [dkt. 13 at 5-9], but the Court may not supply a rationale that the ALJ himself did not provide. *See Parker v. Astrue,* 597 F3.d 920, 922 (7th Cir. 2010). The question is not whether the record might support some RFC or whether the ALJ was required to find Kimberley more limited. Rather, the question is whether the ALJ built a logical bridge from the evidence to the particular RFC he assessed. Given the absence of any medical assessment of Kimberley's functioning, the consultants' conclusion that the available evidence was insufficient to make such an assessment, and the ALJ's

failure to identify evidence supporting the particular limitations selected, the Court cannot conclude that the ALJ did so in this case. *See Josette S.*, 2023 WL 2477536, at \*7-8; *Tobias B. v. Kijakazi*, 2022 WL 4356857, at \*5 (N.D.Ill. Sept. 20, 2022) ("Without any medical opinions in the record — whether from a state agency consultant or treating physician — it is unclear what the ALJ relied on in determining Claimant's RFC, aside from her own interpretation of medical evidence, which is an impermissible source."); *see also Stephen R. S. v. Comm'r of Soc. Sec.*, 2022 WL 897188, at \*6 (S.D. Ill. Mar. 28, 2022). Accordingly, the undersigned concludes that remand is required for the ALJ to reconsider Kimberley's RFC and adequately explain the evidentiary basis for the specific functional limitations assessed.

### B.      Other arguments

Because the undersigned finds remand to be necessary on the grounds set forth above, she will not address Kimberley's other arguments and makes no recommendation regarding those issues. Kimberley may raise these or other concerns on remand if she deems it appropriate to do so.

## IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE and REMAND** the Commissioner's decision finding that Kimberley was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure. **Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

So RECOMMENDED.

Date: 7/20/2026

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

10

Distribution

All ECF-registered counsel of record via email